FREDERICK MARC COOLEY
P.O. BOX 4575
VALLEJO, CA 94590
(707) 373-6405
cooleyfrederickm@gmail.com

FILED

FEB 0 2 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DISVISION

| | |
|---|---|
| FREDERICK MARC COOLEY,<br><br>Plaintiff,<br><br>v.<br><br>WESTLAKE FINANCIAL SERVICES LLC; EXPERIAN INFORMATION SOLUTION, INC.; DOES 1-10,<br><br>Defendants. | No. 2:26-CV-0272 DC AC PS<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.**<br><br>**Demand for Jury Trial** |

## I. JURISDICTION AND VENUE

1. This action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681 et seq. This Court has federal question jurisdiction under 28 U.S.C. §1331.

2. Venue is proper in this District under 28 U.S.C. §1391(b) because Plaintiff resides in this District, the credit reporting occurred here, and Defendants conduct business here.

1

## II. PARTIES

3. Plaintiff **Frederick Marc Cooley** is a natural person residing in Vallejo, California, and is a "consumer" as defined by 15 U.S.C. §1681a(c).

4. Defendant **Westlake Services, LLC** ("Westlake") is a furnisher of credit information within the meaning of 15 U.S.C. §1681s-2 and regularly furnishes consumer account information to Experian.

5. Defendant **Experian Information Solutions, Inc.** ("Experian") is a consumer reporting agency ("CRA") within the meaning of 15 U.S.C. §1681a(f).

6. Defendants DOES 1–10 are persons or entities whose identities are presently unknown.

## III. FACTUAL ALLEGATIONS

### A. Vehicle purchase and VSC

7. On September 8, 2021, Plaintiff purchased a 2017 Chevrolet Impala and financed the purchase through a retail installment sales contract ("RISC") assigned to Westlake by TrueWright doing business Cal Auto Outlet 4 Cars located in Rio Linda, California .

8. Plaintiff purchased a Vehicle Service Contract ("VSC") for $2,750.00, administered by GWC Warranty Corporation.

2

9. The VSC covered major mechanical failures, including transmission issues, which Plaintiff experienced repeatedly.

## B. Accident and Farmers' repairability determinations

10.     On November 18, 2022, the vehicle sustained undercarriage damage in a single-vehicle accident.

11.     Farmers Insurance initially categorized the vehicle as a total loss, but Plaintiff disputed that determination.

12.     Farmers later determined the vehicle **was repairable**, not a total loss, and authorized repairs.

13.     On **March 3, 2023**, Farmers notified Westlake that the vehicle was repairable. The Westlake employee identified was **"Elena."**

14.     On **March 14, 2023**, Farmers again notified Westlake that the vehicle was not a total loss. The Westlake employee identified was **Alba Garcia**.

15.     Despite this knowledge, Westlake continued to treat the vehicle as a total loss.

## C. Westlake's January 2023 cancellation requests

16.     On January 12, 2023, Westlake issued a written "Service Contract Cancellation Request" to GWC Warranty, asserting:

- **Event Type:** TOTAL LOSS
- **Event Date:** 11/18/2022
- **Mileage:** 147,821
- **Refund to:** Westlake Financial Services

17.    On January 17, 2023, Westlake sent a second cancellation request to GWC and the selling dealership, again asserting a total loss and demanding the refund be issued to Westlake.

18.    These cancellation requests were based on a **false total-loss premise**, contradicted by Farmers' March 2023 repairability notices.

## D. GWC's March 28, 2023 refund to TrueWright (Cal Auto)

19.    On *March 28, 2023*, GWC Warranty processed the cancellation and issued a **Retail Refund Amount of $1,631.02** under Contract No. GVP94F346C.

20.    The refund check was made payable to **TrueWright (Cal Auto)** at:

**2440 Elkhorn Blvd**
**Rio Linda, CA 95673**

21.    The refund was not issued to Plaintiff and not issued to Westlake.

## E. Corrected refund flow: GWC → TrueWright → Westlake → TrueWright (Temporary credit, reversal, and concealment)

22.    After receiving the refund from GWC, TrueWright issued a check for $1,631.02 payable to Westlake Financial, referencing cancellation of Plaintiff's VSC.

4

23.    Westlake received and deposited the TrueWright refund check.

24.    Westlake temporarily credited Plaintiff's account with the refund amount.

25.    On May 31, 2023, Westlake issued **Check No. 126431** in the amount of **$1,631.02**, payable back to TrueWright, thereby reversing the credit previously applied to Plaintiff's account.

26.    A River City Bank notice confirms that TrueWright deposited Westlake's May 31, 2023 check on June 13, 2023.

27.    TrueWright retained the refund as **dealer participation**, and the refund never reduced Plaintiff's account balance.

28.    Plaintiff was **never notified** of the cancellation, the refund, the temporary credit, or the reversal, and did not learn of the refund process until February 27, 2024.

29.    As a result, Plaintiff's account balance remained **inflated, inaccurate, and uncorrected**.

## F. Westlake's February 27, 2024 CFPB response

30.    On February 9, 2024, Plaintiff filed CFPB Complaint No. **240210-13273792**.

31.    On February 27, 2024, Westlake responded, admitting:

- It cancelled the VSC because the vehicle was "initially deemed a total loss."
- A refund was issued after cancellation.
- Farmers later informed Westlake the vehicle was repairable.

5

- The refund check was "sent back to the dealer to reinstate the warranty."

32.    Westlake did not disclose:

- that GWC sent the refund to TrueWright,
- that TrueWright forwarded the refund to Westlake,
- that Westlake temporarily credited and then reversed the refund, or
- that Plaintiff was never notified of any part of the refund process.

## G. Plaintiff's rescission and Westlake's rejection

33.    On November 10, 2024, Plaintiff rescinded the RISC under California Civil Code §1691, offered to return the vehicle, and requested restitution of all payments made, including interest due to his right to rescind under Civil Code § 1689 (b)(2) specifically cancellation of his VSC and their refusal to correct under Civil Code § 1782 after written notice and 30 days expired.

34.    On November 11, 2024, Westlake rejected the rescission, refused restitution, continued to treat the account as a valid and enforceable obligation, and **retained all of Plaintiff's payments and interest**.

6

**H. Plaintiff ceased payments because the RISC was void upon rescission**

35.     After Westlake rejected the rescission, Plaintiff ceased making further payments because the RISC was **void upon rescission** under California Civil Code §1691.

**I. Westlake's unlawful repossession and deficiency threats**

36.     On **May 29, 2025**, Westlake directed the repossession of Plaintiff's vehicle from Plaintiff's residence **without Plaintiff's knowledge or consent** and **without a valid security interest**, in violation of California Commercial Code §9609.

37.     On June 3, 2025, Westlake issued a "Notice of Intent to Dispose of Motor Vehicle," asserting default, demanding reinstatement and redemption, and threatening a deficiency balance.

38.     Westlake issued this notice despite the rescission, despite having no security interest, and despite retaining Plaintiff's payments and interest.

**J. Westlake's false furnishing to Experian**

39.     After the unlawful repossession, Westlake furnished information to Experian reporting Plaintiff's account as:

- **"charged off,"**
- **$6,107 written off**, and
- **$6,862 past due as of December 2025**,

7

and reported multiple months of charge-off status and delinquency activity occurring after rescission.

40.    This reporting was materially false because the RISC was void, the repossession was unlawful, the balance was inflated by the refund reversal, and Westlake had no enforceable claim.

## K. Plaintiff's January 5, 2026 dispute to Experian

41.    On January 5, 2026, Plaintiff submitted a written dispute to Experian regarding the accuracy of the Westlake tradeline, referencing **Experian Report No. 2511-1412-20**.

42.    Plaintiff disputed the repossession, charge-off, past-due balance, and all delinquency activity reported after rescission.

## L. Experian's January 27, 2026 "REMAINS" result

43.    On January 27, 2026, Experian completed its reinvestigation and issued written results stating **"REMAINS — the company has certified the information is accurate."**

44.    Experian continued reporting the account as charged off with a past-due balance of $6,862, despite the account being void, unlawfully repossessed, inflated, and legally unenforceable.

45.    Experian failed to consider the rescission, the extinguished security interest, the unlawful repossession, the refund reversal, or the inflated deficiency balance, and relied solely on Westlake's false verification.

8

46.     Plaintiff suffered credit harm, emotional distress, and loss of credit opportunities.

## IV. CAUSES OF ACTION

**COUNT I — FCRA §1681s-2(b) (Against Westlake)**

47.     Plaintiff realleges paragraphs 1–46.

48.     Westlake failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian.

49.     Westlake verified information it knew or recklessly disregarded was false.

50.     Westlake acted willfully by verifying the account despite:

- false total-loss cancellation requests,
- unauthorized VSC cancellation,
- refund issuance and reversal,
- concealment of the refund process,
- rejection of rescission,
- retention of payments and interest,
- unlawful repossession,
- deficiency threats, and
- the void status of the RISC.

51.     In the alternative, Westlake acted negligently.

**COUNT II — FCRA §1681i (Against Experian)**

52.     Plaintiff realleges paragraphs 1–46.

53.     Experian failed to conduct a reasonable reinvestigation.

9

54.    Experian relied solely on Westlake's verification despite clear evidence of inaccuracy.

55.    Experian acted willfully or negligently.

## COUNT III — FCRA §1681e(b) (Against Experian)

56.    Plaintiff realleges paragraphs 1–46.

57.    Experian failed to follow reasonable procedures to assure maximum possible accuracy.

58.    Reporting a rescinded, repossessed, inflated, and unenforceable obligation as valid violates §1681e(b).

## V. DAMAGES

59.    Plaintiff suffered actual damages including credit denials, increased borrowing costs, emotional distress, and loss of time.

60.    **Defendants' conduct was willful within the meaning of 15 U.S.C. §1681n because they knowingly, intentionally, and recklessly disregarded their statutory duties under the FCRA, repeatedly verified information they knew was false, concealed material facts, and continued furnishing and reporting inaccurate information after being placed on notice of its falsity. Plaintiff therefore seeks punitive damages to punish and deter such misconduct.**

61.    In the alternative, Plaintiff is entitled to actual damages under 15 U.S.C. §1681o.

## VI. PRAYER FOR RELIEF

Plaintiff requests:

a. Actual damages;

b. Statutory damages;

c. Punitive damages;

d. Attorneys' fees and costs;

e. Injunctive relief requiring correction and deletion of inaccurate information;

f. Any other relief the Court deems just and proper.

## VII. JURY DEMAND

62.     Plaintiff demands a jury trial on all issues so triable.

## VIII. VERIFICATION

I, **Frederick Marc Cooley**, am the Plaintiff in this action.

I have read the foregoing Verified Complaint and know its contents. The facts stated in the Verified Complaint are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: ___February 2___, 2026, at Vallejo, California.

_____

Frederick Marc Cooley,  In Pro Se

11